# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **L.A., H.A.-1, and H.A.-2**

**No. 18-0490** (Roane County 16-JA-3, 16-JA-4, and 16-JA-5)

**FILED**

**November 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother A.A., by counsel Jeffrey A. Davis, appeals the Circuit Court of Roane County's April 19, 2018, order terminating her parental rights to L.A., H.A.-1, and H.A.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order, along with a supplemental appendix. The guardian ad litem ("guardian"), Leslie L. Maze, filed a response on behalf of the children in support of the circuit court's order, along with a supplemental appendix. On appeal, petitioner argues that the circuit court erred in denying her an opportunity to meaningfully participate in a post-adjudicatory improvement period and making an "impossible condition" a requirement of petitioner's post-adjudicatory improvement period. Petitioner also argues that she was denied effective assistance of counsel.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On February 12, 2016, the DHHR filed an abuse and neglect petition against petitioner alleging that petitioner's substance abuse and mental health issues caused her to neglect the children. The DHHR alleged that petitioner admitted to using marijuana while the children were in her care and overdosing on Depakote in 2014. Further, the DHHR alleged that petitioner inflicted physical and emotional injury on the children. Specifically, the oldest child disclosed to

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, they will be referred to as H.A.-1 and H.A.-2, respectively, throughout this memorandum decision.

[2] Petitioner does not raise a specific assignment of error regarding the termination of her parental rights.

1

the guardian that petitioner had thrown her on the floor, left marks on her body from spankings, and held her head under water in the bathtub as punishment. On March 15, 2016, the circuit court held a preliminary hearing. The circuit court found that the evidence showed that petitioner's substance abuse issues impaired her ability to parent the children and that she had physically abused one or more of the children.

On May 2, 2016, the circuit court held an adjudicatory hearing. The circuit court found that petitioner had a history of mental health issues for which she was not receiving treatment. The circuit court also found that petitioner's untreated mental health issues, use of marijuana, and physical abuse of the children constituted abuse and neglect. Petitioner admitted to using marijuana while the children were in her care and overdosing on her medication in 2014. Petitioner was adjudicated as an abusing parent.

On August 18, 2016, the circuit court held a status hearing at which it granted petitioner's motion for a post-adjudicatory improvement period. The circuit court found that petitioner "acknowledges her mental health issues were a contributing factor to the abuse and neglect suffered by the [i]nfant [r]espondents." The circuit court ordered petitioner to participate in a personality assessment and ordered the DHHR to assist in providing petitioner's mental health assessment and treatment. The matter was scheduled for a sixty-day review in October of 2016.

In September of 2016, two separate criminal indictments were returned against petitioner on charges unrelated to these proceedings. Petitioner was indicted for the felony crime of unlawful wounding. The incident that led to that indictment involved a "fit of 'road rage'" in which petitioner "wounded an individual with a tire tool." She was also indicted for the felony crime of wanton endangerment. The incident that led to that indictment involved petitioner firing multiple shots from a pistol and pointing a loaded gun at a neighbor. Petitioner was incarcerated for approximately one month following the incidents until she posted bond. In October of 2016, the DHHR moved to terminate petitioner's post-adjudicatory improvement period and suspend visitation with the children. The circuit court took judicial notice of the indictments returned against petitioner, scheduled a hearing on the DHHR's motion, and suspended visitation between petitioner and the children. On December 21, 2016, the circuit court held a hearing at which petitioner moved to continue the matter in order to participate in an inpatient mental health treatment program. There were no objections to petitioner's motion and the circuit court granted the same.

On March 15, 2017, the DHHR filed a motion to terminate petitioner's post-adjudicatory improvement period and her parental rights. In its motion, the DHHR argued that on August 18, 2016, petitioner was granted a six-month post-adjudicatory improvement period and was then indicted on criminal charges in two unrelated cases in September of 2016. The DHHR further argued that the matter was continued in December of 2016 for petitioner to seek inpatient mental health treatment; however, the DHHR had not received any evidence of petitioner seeking said treatment. Lastly, the DHHR argued that petitioner demonstrated violent behaviors during her post-adjudicatory improvement period.

On April 21, 2017, petitioner filed a motion to reinstate her post-adjudicatory improvement period.[3] In her motion, she argued that, upon her release from incarceration, she participated in parenting and life skills classes for approximately three weeks. She also argued that she made attempts to resume visitation with the children, but was denied by the DHHR. Further, she argued that the DHHR moved to terminate her parental rights "based solely on the grounds that she had been charged in a criminal matter during said improvement period." She also argued that the children were not present during the "alleged incidents giving rise to said charges." Petitioner asserted that she had not refused, but was denied the opportunity to fully participate in the previously granted improvement period.

On April 9, 2018, the circuit court held a dispositional hearing at which it noted that earlier that same day, petitioner was sentenced to one to three years of incarceration following her conviction of attempt to commit wanton endangerment involving a firearm. The circuit court then heard testimony from petitioner. The DHHR and guardian both moved the circuit court to terminate petitioner's parental rights. In its April 19, 2018, order, the circuit court found that petitioner "clearly acknowledged that she did not successfully complete the improvement period." The circuit court also found that petitioner had not visited the children in over a year and that her sentence of one to three years of incarceration would prohibit visitation during that time. Finally, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the welfare of the children. Ultimately, the circuit court terminated petitioner's parental rights in its April 19, 2018, dispositional order.[4]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

---

[3]It is unclear from the record whether the circuit court terminated petitioner's improvement period or if it expired on its own terms. However, in its dispositional order, the circuit court referred to her motion as a motion to extend the improvement period. The circuit court did not specifically rule on the motion in that order.

[4]The children remain in the physical and legal custody of their nonabusing father.

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that she was denied "the opportunity to meaningfully participate in a post[-]adjudicatory improvement period" due to "criminal charges that were unrelated to her abuse and neglect case." However, she conversely argues that "[b]y all reports, she successfully participated in parenting and life skills classes, as well as supervised visits with her children, before and after said improvement period was granted." Petitioner fails to cite to the record to any such "reports" of her participation. In fact, the record is devoid of any evidence that petitioner substantially complied with the terms and conditions of her post-adjudicatory improvement period. Conversely, in its April 19, 2018, dispositional order, the circuit court found that petitioner "clearly acknowledged that she did not successfully complete the improvement period."

Petitioner also argues that visits with the children were suspended without a hearing on the matter. However, no such hearing was required. Rule 15 of the Rules and Procedures for Child Abuse and Neglect Proceedings provides that "the court shall consider whether or not the granting of visitation would interfere with the child's case plan and the overall effect granting or denying visitation will have on the child's best interests." Here, the circuit court suspended petitioner's visits with the children by order entered on October 4, 2016, following petitioner's indictments for two violent crimes. There is no evidence in the record to suggest that any other services were suspended. Considering petitioner's history of substance abuse, domestic violence, and physical abuse of the children, as well as her indictments for unlawful wounding and wanton endangerment, the circuit court did not abuse its discretion by suspending visitation because visitation was clearly not in the children's best interests. Based on this evidence, we find that the circuit court did not deny petitioner a meaningful opportunity to participate in her post-adjudicatory improvement period and she is entitled to no relief.

Next, petitioner argues that the circuit court erred in making an "impossible condition" a requirement of her post-adjudicatory improvement period—her participation in an inpatient mental health treatment program. In August of 2016, petitioner acknowledged that her mental health issues were a contributing factor to the abuse and neglect suffered by the children and as a condition of her improvement period, she was required to participate in a mental health assessment and treatment. In December of 2016, petitioner moved to continue the matter in order to participate in an inpatient treatment program, which the circuit court granted. While petitioner asserts on appeal that she attempted to enter into an inpatient mental health treatment program, but was allegedly denied admission because her mental conditions were inappropriate for inpatient treatment, there is no evidence in the record to support her assertion. In fact, in its March 15, 2017, motion to terminate petitioner's post-adjudicatory improvement period and parental rights, the DHHR argues that it did not have any evidence of petitioner's attempts to enter into inpatient treatment. Because the record is devoid of any evidence that she attempted to enter inpatient mental health treatment, we find petitioner is entitled to no relief.

Finally, petitioner argues that she was denied effective assistance of counsel because counsel "advised petitioner to agree to a condition of her post[-]adjudicatory improvement period that was impossible to perform." However, it is important to note that this Court has never

recognized a claim of ineffective assistance of counsel in an abuse and neglect proceeding and we decline to do so here.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 19, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 19, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment